NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3267-15T2

ROY HENDRICKSON,

 Petitioner-Respondent,

v.

UNITED PARCEL SERVICE - EDISON,

 Respondent-Appellant.
________________________________

 Argued June 7, 2017 – Decided July 11, 2017

 Before Judges Alvarez and Accurso.

 On appeal from the New Jersey Department of
 Labor, Division of Workers' Compensation,
 Claim Petition No. 2014-10726.

 Shealtiel Weinberg argued the cause for
 appellant (Brown & Connery, LLP, attorneys;
 Mr. Weinberg, on the brief).

 Richard N. Schibell argued the cause for
 respondent (Schibell & Mennie, LLC,
 attorneys; Mr. Schibell, of counsel; Ellen
 D. Fertakos, on the brief).

PER CURIAM

 United Parcel Service – Edison appeals from the March 16,

2016 decision of the Division of Workers' Compensation granting

petitioner Roy Hendrickson's motion for temporary benefits and
medical treatment. Because the decision by the Judge of

Compensation finds ample support in the record, we affirm.

 Hendrickson was fifty-nine years old and had worked for UPS

for almost thirty years at the time of the hearing in this

matter. For his first nineteen years with the company, he

worked as a package car driver. The job entailed making over

one hundred stops a day to deliver or pick up packages weighing

up to one hundred and fifty pounds. Although drivers were

entitled to assistance with packages weighing over seventy

pounds, Hendrickson testified he never received such assistance.

He suffered his first back problem while working a Staten Island

route within the first four or five years of his employment. He

testified that sometime around 1992, his "[l]ower back gave out"

and his "legs went out from under [him]." He did not file a

workers' compensation claim. He received chiropractic treatment

and returned to work with no residual effects.

 Ten years later, in 2002, Hendrickson's route had changed.

He was driving out of Lakewood, serving industrial customers.

He hurt his back lifting a heavy package and was out of work for

almost two months. Hendrickson was diagnosed with "residuals of

repetitive lumbar sprains," "degenerative disc disease at

multiple levels with bulging discs at L4-L5 and L5-S1," "mild

foraminal stenosis at L5-S1," and "chronic lumbar myositis and

 2 A-3267-15T2
fibromyositis." After a course of physical therapy, he returned

to work. Hendrickson filed a claim and was awarded 15% partial

total disability.

 The claim was reopened in 2004, after Hendrickson

complained of constant and severe pain in his mid to low back

radiating into his left leg. It was settled in 2006 for an

increase to 17.5% permanent partial total with a credit for the

prior award.

 Shortly before the claim was settled in 2006, Hendrickson

began working as a feeder driver for UPS, driving tractor-

trailers to New York City, the Meadowlands, Secaucus and

Cranbury, as well as to other locations in New York, Connecticut

and Rhode Island. He drove single-axle International or Mack

trucks without air ride suspensions, which he testified

transmitted pronounced shock and vibration over the pot-hole

ridden roads he drove regularly. Hendrickson's back was still

painful, exacerbated by the poor suspensions and bad roads he

confronted on a daily basis. He underwent occasional

acupuncture treatment, which was not successful.

 In 2008 or 2009, Hendrickson, while still working as a

feeder driver, also began working as a shifter driver. A

shifter uses his tractor to move trailers at slow speeds (five

miles per hour or less), repositioning them around the terminal.

 3 A-3267-15T2
The work involves backing the truck into a trailer and "hitting

the pin" to connect the two. Hendrickson testified that every

time he made that connection, at least seventy-five times a day,

there is "a good impact," which he likened to "getting punched

in the back."

 Hendrickson testified he collapsed at a mall in 2012 or

2013 as a result of pain and numbness radiating down his legs

from his low back. When he told his chiropractor that he was

losing feeling in his legs, the chiropractor sent him for an

MRI. An MRI of Hendrickson's spine taken in August 2013,

revealed focal disc herniation at L3-4 and L4-5, substantial

foraminal and lateral recess stenosis at L3-4 and severe

stenosis at L4-5, substantial nerve root impingement at L3-4 and

a minimal disc bulge at L5-S1. When the results of the MRI came

back, Hendrickson's chiropractor refused to continue to treat

him.

 Hendrickson began treatment with a physician in 2014, who,

after examining him and reviewing the MRI, diagnosed him with

severe sciatica, lumbar disc herniation at L3-4 and L4-5, and

lumbar radiculopathy. The doctor recommended bilateral nerve

root blocks at L4-5 and disc decompression at L3-4 and L4-5.

Hendrickson continued to try and work, notwithstanding his pain,

but testified his situation soon became intolerable. He

 4 A-3267-15T2
underwent surgery in March 2014 to decompress the disc at L4-5,

and remained out of work for six weeks.

 Hendrickson got pain relief from the procedure for about

three months. In June, the pain returned and Hendrickson's

doctor again put him out of work while he underwent a new MRI

and was further assessed for surgery. Hendrickson's MRI

revealed persistent left lateral recess and foraminal disc

herniation at L4-5 causing severe narrowing of the left lateral

recess and foramen and impingement upon the left L5 nerve root.

The study also revealed left foraminal disc herniation at L3-4.

 At the time of the trial, Hendrickson testified he was

still working, although putting his pain most days at a level of

about seven or eight on a scale of ten. He generally eschews

medication, but admitted to having recently taken a six-day

course of steroids, muscle relaxers and anti-inflammatories for

"temporary relief to keep [his] sanity." He testified he is

restricted and careful regarding his activities outside of work

"because [he] need[s] to work to pay the bills." There was no

evidence to suggest Hendrickson had ever suffered any injury

outside of work that would have contributed to his back

condition.

 At trial, both Hendrickson's and UPS's experts agreed that

Hendrickson likely required additional surgery, they disagreed

 5 A-3267-15T2
as to why. Relying on the operative notes of the spine surgeon,

Hendrickson's expert, Dr. Michael M. Cohen, testified the

surgeon observed significant disc disruption creating entrapment

and compression including inflammatory tissue effacing the route

consistent with evidence of acute and chronic inflammatory

changes, including annular disruption, degeneration, and

neurovascularization. In other words, Hendrickson's disc was

broken apart around the nerve, causing the body to react with

white blood cells, which caused the tissue to become inflamed

and likely caused the pain he experienced.

 In Dr. Cohen's opinion, that injury was a result of the

stresses Hendrickson suffered as a feeder driver and shifter,

the vibration, compression and rotation of his discs from being

bounced around on bad roads in a truck with poor suspension and

the repetitive impact of backing his tractor into trailers in

the yard. In his view, Hendrickson's injuries were not the

natural progression of the trauma he suffered in 2002, but the

result of "a rather extreme form of repetitive occupational

stress," rapidly accelerating the degeneration of the discs in

Hendrickson's spine.

 UPS's expert, Dr. Nirav Shah, disagreed. Dr. Shah

testified to his understanding that Hendrickson suffered an

injury to his back on April 16, 2014 from lifting packages at

 6 A-3267-15T2
work.1 Upon examination, he found Hendrickson had subjective

limitations, but no significant deficits attributable to his

spine. After reviewing the 2013 and 2014 MRIs, Dr. Shah agreed

with Hendrickson's spine surgeon that they revealed herniations

at L3-L4, L4-L5 and "a little bit so at L5-S1" that may have

caused radiculopathy, an inflammation of the nerve root, making

him a surgical candidate. He concluded, however, that those

injuries were the result of chronic degenerative changes flowing

from the "2002 disability and injury that progressed naturally"

and not from repetitive occupational activity. In his opinion,

Hendrickson's job duties as a feeder driver and shifter had no

impact on the development of his current condition.

 The compensation judge rejected the testimony of UPS's

expert. After summarizing the procedural history and testimony

presented, the judge began his findings with Hendrickson, who he

deemed

 very credible. He appeared honest and
 forthright in his responses. He never
 attempted to hide or diminish the fact that
 he did suffer previously work-related trauma
 to the same area of his lumbar spine.

 It is the court's belief that the
 petitioner has been a faithful, hard working
 and honest employee of UPS for 29 years.
 Unlike many individuals in this day and age,

1
 Hendrickson was at home on disability on that date, recovering
from his discectomy and neural decompression surgery.

 7 A-3267-15T2
 this petitioner believes in working through
 the average ailments caused by stressful
 work conditions. The court believed him
 when he said that his 2006 transfer to
 feeder and shifter driver worsened his back
 condition due to the different types of
 stresses he underwent there as opposed to
 when he was a package car driver, and the
 court also believes that he intended to work
 as long as he could as he thought it was
 just the right thing to do. The court was
 very impressed with his testimony and found
 him credible.

 Turning to Hendrickson's expert, Dr. Cohen, the judge

stated he was

 exceedingly impressed with Dr. Cohen. His
 examination and history were very thorough.
 He explained from a medical point of view
 how the stresses which the human body
 endures while driving a tractor trailer can
 greatly exacerbate an underlying,
 preexisting traumatic condition. The
 doctor's explanations and conclusions just
 made sense to the court, and the court
 believes that the doctor has shown with
 objective medical evidence that the
 petitioner's occupational exposure worsened
 to a material degree his preexisting
 condition and is, in fact, the direct and
 proximate cause for the petitioner's current
 need for treatment.

 Regarding UPS's expert, Dr. Shah, the judge stated he was

 impressed with Dr. Shah as a physician. His
 resume and history are undeniably
 preeminent. As a witness, however, the
 court was not impressed. This case alleged
 an exposure between 2006 and 2013 and the
 court observed that the doctor would not
 answer questions directly regarding the
 exposure period. Instead he would

 8 A-3267-15T2
 consistently talk about the 2013, 2014 MRI's
 and their lack of findings. He seemed to
 actively avoid the fact that there was a
 surgical procedure in between these two MRIs
 and that all the doctors now recognize that
 the need for treatment due to, among other
 things, nerve root compression which was not
 mentioned at any time during the 2002 claim
 or its reopener and not diagnosed until well
 into the occupational exposure period.

 Furthermore, the doctor mistakenly
 believed at the time of his examination of
 the petitioner that there was a 2014
 accident. There was not.

 This court was not impressed with the
 doctor's testimony, and the court believes
 that the doctor was merely defending a
 position he was asked to defend to the point
 of being evasive and nonresponsive to the
 questions being asked. At one point, the
 court implored the doctor to attempt to
 decide the overall case without mentioning
 the 2013, 2014 MRI's. The doctor could not
 do this. For these reasons, the court does
 not find Dr. Shah's testimony persuasive.

 Applying the law to his factual findings, the judge

concluded that Hendrickson had

 shown by a preponderance of the credible
 evidence that the occupational activities he
 engaged in with United Parcel Service from
 2006 to 2013 accelerated and exacerbated his
 preexisting lumbar condition.

 Furthermore, the court finds that the
 specific work as a feeder driver and a
 shifter driver were of such a nature that
 the stresses on Mr. Hendrickson's lumbar
 spine were characteristic of and peculiar to
 that type of employment.

 9 A-3267-15T2
 Beginning in 2006 and continuing until
2012, Mr. Hendrickson, as a feeder driver
for respondent, drove single-axle trucks
over roads ridden with potholes and
unevenness and under construction. Mr.
Hendrickson testified in detail as to the
constant bouncing around in the cab of his
truck. When Mr. Hendrickson's truck hit a
bump or a pothole or any other sort of road
imperfection, he would receive a "complete
shock" to his lower back, a feeling which he
likened to playing football and taking a
solid punch to the back. At times his body
would be bounced around so much that his
head would hit the ceiling of the cab.

 Beginning in 2008 and continuing to the
present, Mr. Hendrickson has been a shifter
for respondent. He described what a rough
ride this was and how 75 times a day he
would have to back up and connect to a
trailer, which is commonly referred to as
hitting the pin, and that this sensation was
equivalent to getting hit in the back.

 Outside of his employment it should be
noted Mr. Hendrickson has an exceptionally
sedentary life.

 The court rejects in total respondent's
arguments that no objective evidence exists
to show a worsening and that his condition
is merely related to the 2002 claim. There
are new levels of disc involvement[,] nerve
root compression and all parties believe
that Mr. Hendrickson is now a candidate for
further treatment.

 The court finds that Mr. Hendrickson's
job at UPS from 2006 to 2013 is the
overwhelming cause of his current medical
condition, and the court finds in favor of
the petitioner and grants his motion for
medical treatment.

 10 A-3267-15T2
 UPS appeals, contending Hendrickson's claim is barred by

the two-year statute of limitations for occupational claims,

that the "claim is barred by the holding in Peterson v. Hermann

Forwarding[2] regarding filing occupational claims subsequent to

accidental claims for overlapping injuries" and that the judge's

"factual and procedural errors" undermine the finding that

Hendrickson "proved he incurred a compensable occupation injury

for which he required treatment." We reject those arguments as

unpersuasive.

 Although UPS claims the judge of compensation "failed to

properly apply the law" regarding the statute of limitations for

compensation claims and "the filing of an occupational claim

when a petitioner fails to timely 'reopen' a prior accidental

workers' compensation claim," it is plain its arguments are

premised entirely on its disagreements with the compensation

judge's fact findings. Those findings, however, are binding on

us because they have ample support in the record. See Sager v.

O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004). The

Supreme Court has commanded that "[d]eference must be accorded

the factual findings and legal determinations made by the Judge

of Compensation unless they are manifestly unsupported by or

2
 Peterson v. Hermann Forwarding Co., 267 N.J. Super. 493 (App.
Div. 1993), certif. denied, 135 N.J. 304 (1994).

 11 A-3267-15T2
inconsistent with competent relevant and reasonably credible

evidence as to offend the interests of justice." Lindquist v.

City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003)

(internal quotation marks omitted); see also Kovach v. Gen.

Motors Corp., 151 N.J. Super. 546, 549 (App. Div. 1978) ("It

must be kept in mind that judges of compensation are regarded as

experts.").

 Here, there is no question but that the Judge of

Compensation properly understood the deadlines for filing a

compensation claim and a reopener. The judge did not

misunderstand the law. His ruling was premised on the facts he

found after evaluating the testimony. The timeliness of

Hendrickson's claim turned on whether his continued employment

at UPS, "merely cause[d] pain from pre-existing conditions to be

manifested" as in Peterson, supra, 267 N.J. Super. at 505, or

whether it resulted from "additional 'physical insult,' . . .

materially attributable to [his] job duties" as in Singletary v.

Wawa, 406 N.J. Super. 558, 568 (App. Div. 2009).

 Based on Hendrickson's detailed testimony about the

different stresses to his back from the different jobs he held

at UPS, and Dr. Cohen's testimony linking Hendrickson's duties

as a feeder driver and shifter to the 2013 and 2014 MRIs and his

opinion that Hendrickson's need for treatment resulted from

 12 A-3267-15T2
occupational exposure and not the 2002 injury, the judge

concluded "the overwhelming cause of [Hendrickson's] current

medical condition" was his work at UPS from 2006 to 2013, making

this case consistent with Singletary and unlike Peterson. The

judge expressly rejected Dr. Shah's view that Hendrickson's

current complaints and the 2013 and 2014 MRIs reflected the

natural progression of the 2002 injury, and thus the factual

basis for UPS's arguments that the claim was untimely.3 We find

no error in that conclusion based on the judge's assessment of

the evidence in the record.

 We reject UPS's argument that factual errors in the judge's

rendition of the testimony undermines the deference ordinarily

due his findings. Our review of the testimony and the judge's

findings do not lead us to conclude the judge misread

Hendrickson's testimony or misunderstood the MRI findings. The

3
 Even assuming a 2012 date as when Hendrickson collapsed at the
mall with pain and numbness in both legs as the date for accrual
of the claim, instead of the date of the 2013 MRI revealing new
herniation and substantial nerve root impingement at L3-4,
Hendrickson's April 15, 2014 petition would be timely. See Earl
v. Johnson & Johnson, 158 N.J. 155, 163 (1999) (noting "it is
possible to have a work-related health problem that is not
sufficiently debilitating to be compensable"). The judge
accepted Hendrickson's testimony acknowledging his back pain had
progressively worsened over the years, but that it was not until
the end of 2012 or 2013 when he sought treatment for new pain
and numbness greater than anything he had previously
experienced.

 13 A-3267-15T2
judge's findings were "reasonably . . . reached on sufficient

credible evidence present in the whole record." Kozinsky v.

Edison Prods. Co., 222 N.J. Super. 530, 537 (App. Div. 1988).

UPS's remaining arguments, to the extent we have not addressed

them, lack sufficient merit to warrant discussion in a written

opinion. See R. 2:11-3(e)(1)(D) and (E).

 Affirmed.

 14 A-3267-15T2